## Texas Co. *v.* McCanless, Commissioner of Finance and Taxation.

### (*Nashville*, December Term, 1940.)

#### Opinion filed March 8, 1941.

240

Seay, Stockell & Edwards, of Nashville, for complainant.

Roy H. Beeler, Attorney-General, and W. F. Barry and Harry Phillips, Assistant Attorneys-General, for defendant.

Mr. Chief Justice Green delivered the opinion of the Court.

This case involves a controversy between the complainant and the Commissioner of Finance and Taxation with reference to the liability of the former for the so-called inspection fee exacted with respect to gasoline and like products by Code section 6809 et seq., more particularly by sections 6817, 6818, and 6821. The facts are stipulated. The chancellor decided the major portion of the controversy in favor of the complainant. Both parties assigned errors.

As a part of its business the complainant ships into this State from other States quantities of gasoline, which

gasoline is stored in tanks for a period of less than sixty days, and then shipped out of the State to consumers there located. None of the gasoline involved in this litigation was sold or used in Tennessee.

Code, section 6817 and following sections exact a so-called inspection fee of 20 cents a barrel or less quantity upon gasoline and kindred substances enumerated, sold or used, and/or stored in this State. The nature of this exaction has been considered by the court in a number of decisions. The amount of the exaction largely exceeds the cost of inspection. In the recent case of *State* v. *Nashville, C. & St. L. Ry. Co.*, 176 Tenn., 24, 137 S. W. (2d), 297, 299, we said:

"This court has long since recognized that the exaction here in question is in chief an excise tax and to a limited extent only an inspection charge. *State of Tennessee* v. *Reed Oil Co.*, 176 Tenn., 10, 137 S. W. (2d), 292; *State ex rel.* v. *Jackson*, 172 Tenn., 119, 110 S. W. (2d), 323. This is to say the statute assesses an excise tax on the sale, use or storage of these products measured by the number of barrels sold, used or stored. This as well as some charge for inspection."

Section 1126 et seq. of the Code levies a gasoline tax, an excise or privilege tax, on dealers in gasoline or distillates thereof equal to 5 cents for each gallon of gasoline or distillate sold or distributed by such dealer in the State during each year. This tax has been increased by subsequent legislation and made to apply to those storing gasoline or distillates thereof. Chapter 130 of the Acts of 1933.

Code, section 1140, dealing with the gasoline tax, provided "None of the provisions of this statute shall apply to the sales of gasoline or distillate when sold for, and

exported out of the State." Pub. Acts 1923, chap. 58, sec. 11.

A number of the Code sections constituting the gasoline tax laws were amended by this chapter 130 of the Acts of 1933. Among other things, section 13 of the Act of 1933 provides as follows:

"That Section 1140 be amended by striking out said Section and substituting in lieu thereof the following:

" 'Gasoline or distillate not previously the subject of an original sale in this State, stored in this State for export to points outside the State, shall not be included in the measure of the tax liability of any distributor or dealer; provided that such gasoline or distillate is stored in a separate tank marked "export tank;" '

"Provided that a bond is executed by the distributor or dealer that in the opinion of the Commissioner of Finance and Taxation adequately protects the State against loss of tax in case said gasoline or distillate is not subsequently exported outside the State;

"Provided that gasoline or distillate stored for export longer than a period of sixty days must be included in the measure of the tax liability of the distributor or dealer so storing such gasoline or distillate."

The exaction which the complainant is resisting, which it paid under protest and here seeks to recover, is so much of the so-called inspection fee as the Commissioner charged against gasoline kept and disposed of by the complainant in strict conformity with the terms of section 13 of the Act of 1933 for a period of less than sixty days.

The complainant takes the position that the exclusion of gasoline so handled in section 13 aforesaid from "the measure of the tax liability of any distributor or dealer" relieves it of liability from the so-called inspection fee,

or at least so much of such inspection fee as is levied by way of a tax and not by way of inspection. The stipulation shows that 1/25 of this exaction covered the cost of inspection.

The Commissioner takes the position that section 13 of the Act of 1933 only relieves complainant of liability for the gasoline tax on gasoline handled in conformity with the terms of that section. That this exemption has no relation to the so-called inspection fee on gasoline exacted by Code, section 6809 et seq.

The complainant insists that all these acts are to be construed *in pari materia*. The Commissioner challenges this and urges the familiar rule that tax exemption statutes are strictly construed.

There has been a great argument in the case as to whether the gasoline over which this controversy is waged ever departed from the flow of interstate commerce—whether it ever became subject to the taxing power of the State. We do not find it necessary to consider this question, since we think the gasoline was by section 13 of the Act of 1933 relieved of the burden of section 6809 et seq. in so far as the latter sections imposed a tax.

It is not necessary, as has been suggested, to regard gasoline handled in accordance with the terms of section 13 of the Act of 1933 as remaining in the channels of interstate commerce in order to sustain the discrimination made between gasoline stored in a tank marked "Export Tank" and gasoline stored in a tank not so marked.

■ The taxing power of the State is limited to its jurisdiction. When a tax is measured with respect to property, as is the gasoline tax, the property must be located within the jurisdiction of the State. *Street Rail-*

road Company v. Morrow, 87 Tenn., 406, 11 S. W., 348; State Tax on Foreign-held Bonds, 15 Wall., 300, 319, 21 L. Ed., 179.

"To authorize an assessment of personal property in any other state or county than the one in which the owner resides, it must appear that the property is being, to some extent, kept and maintained in such state or county, and is not there casually, nor in transition, nor temporarily, in the ordinary course of business or commerce." Carhart v. Jones, Tenn. Ch., 37 S. W., 565, 566. To like effect see Cooley on Taxation, Fourth Edition, sec. 452 et seq.; 26 R. C. L., 130; 26 R. C. L., 276.

The authorities recognize that permanent and temporary are relative terms and that difficulty arises in determining when a stop is temporary or permanent. The exemption provided by section 13 of the Act of 1933 only applies when the gasoline is not stored for a longer period than sixty days. Without intimating that it might not have made the period shorter, we think it was within the competency of the Legislature to treat a halt in the flow of this gasoline for sixty days as a temporary stop and deal with it accordingly. This, irrespective of whether the gasoline had gone from under the protection of the Commerce Clause of the Constitution, or not.

Gasoline not stored in tanks marked "Export Tanks" may remain in such tanks indefinitely. There is, therefore, a valid reason for the distinction made by the statute.

Sections 1127 and 1128 of the Code levying the gasoline tax characterized it as "a special privilege tax, in addition to all other taxes, for engaging in and carrying on such business in this State." There can be no such thing as an additional tax unless there exists another tax. Therefore in the enactment of the provision carried

into the Code at section 1126 et seq., the Legislature must have had in mind that the tax liability of those in the gasoline business would not be measured by this statute alone.

Section 13 of chapter 130 of the Acts of 1933, by way of amendment, adds a proviso to the statute levying the gasoline tax. The form of this proviso is somewhat unusual. It does not, as provisos usually do, except the subject with which it deals from the scope of the particular act to which it is added. Had it been intended to except transient gasoline from the embrace of the gasoline tax only, the proviso would doubtless have read, in substance, that nothing in this act, or nothing in the sections of the Code amended, shall apply to transient gasoline. But the proviso was much broader and excepted transient gasoline from "the measure of the tax liability" of those in the gasoline business. We have just seen what the Legislature must have considered the tax liability to be and the measure of a thing is the "prescribed limit," "not to be exceeded." Webster's New International Dictionary.

It is contended by the State that chapter 130 of the Act of 1933 cannot be construed to amend or affect section 6809 et seq. of the Code because by its caption the act is entitled one to amend "Sections 1126, 1127," etc., specifically referring to numbered Code sections other than, and not including, section 6809 et seq.

We assume the State relies on the rule contained in *Hays* v. *Federal Chemical Co.*, 151 Tenn., 169, 268 S. W., 883, that when the title of an amendatory act sets out the proposed amendments, such act can include no amendments to the original act other than those indicated in the caption; that accordingly section 6809 et seq. of

the Code, not being among the Code sections named in the caption, cannot be affected by the act. .

Neither this rule nor section 17 of article 2 of the Constitution upon which the rule is based relates to amendments by implication. It may be that under the caption of an amendatory act purporting to amend specified sections of one particular statute other sections of that statute could not be amended. Such an argument would be plausible. A different situation is presented, however, when an amendatory act undertakes to amend sections of the Code. Repeals and amendments by implication were recognized as a matter of necessity. *Home Ins. Co.* v. *Taxing District*, 72 Tenn. (4 Lea), 644. It would be utterly impractical, if not impossible, to require of a legislative act that it contain apt reference to every law which the act might possibly touch. The Code of 1932 contains 12278 sections. Legislation would be greatly embarrassed by a rule that required a statute amending a particular section of the Code to refer to every other section of the Code which by implication the statute might reach.

We accordingly conclude that the chancellor properly held complainant entitled to recover so much of the exaction collected from it under section 6809 et seq. of the Code as represented its tax liability under that statute. We further agree with the chancellor that complainant is not entitled to recover so much of his exaction as represents the actual cost of inspecting the gasoline which is stipulated to have been 1/25 of the prescribed fee. Section 13 of the Act of 1933 only exempts one in the gasoline business from further tax liability, not from a legitimate fee assessed for inspection of the product.

Affirmed.